IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JEFFREY M. SISKIND,

    Plaintiff,

       v.                  CIVIL NO.: WDQ-10-1011

JEREMY FRIEDBERG, *et al.*,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Jeremy M. Siskind sued Jeremy Friedberg and Leitess Leitess Friedberg & Fedder, PC (the "defendants") for defamation and tortious interference with contractual relations. For the following reasons, the defendants' motion to dismiss will be denied.

I. Background[1]

Siskind, who lives in Florida, is a lawyer licensed in multiple jurisdictions. Compl. ¶ 1. Leitess Leitess Friedberg & Fedder, PC, is a law firm with its main office in Maryland. *Id.* ¶ 2. Friedberg is one of its lawyers. *Id*.

---

[1] For the defendants' motion to dismiss, the well-pled allegations in Siskind's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

A. Siskind's *Casino Del Caribe* Deposition

Sometime after 2002, Siskind's father filed for bankruptcy. *See id.* ¶ 4. One issue in the bankruptcy proceeding was the number of shares Siskind owned in Casino Del Caribe, S.A., a Dominican Republic casino. *Id.* ¶ 5. On behalf of a client, the defendants deposed Siskind (the "*Casino Del Caribe* deposition") in an effort to fight his share ownership. *Id.* ¶ 7; ECF No. 8 at 3.

After his deposition, Bar complaints were filed against Siskind in Maryland, New Mexico, Florida, and the District of Columbia, alleging that he had misrepresented facts while being deposed. Compl. ¶ 8. The New Mexico and Florida proceedings were summarily dismissed; the District of Columbia is monitoring the Maryland proceeding. *Id*.

B. Zokaites's *La Mesa Racing* Deposition

The defendants also handle a different bankruptcy case, which involves La Mesa Racing, LLC. *Id*. ¶ 9. On October 12, 2009, Frank Zokaites was assigned a claim against that company. *Id*. ¶ 11. Zokaites is a Siskind client with whom he has "several business relations and contracts." *Id*. ¶ 16.

On February 9, 2010, the defendants deposed Zokaites in Maryland about his claim (the "*La Mesa Racing* deposition"). *Id*. ¶ 15. During a break, Friedberg told Zokaites, "Siskind is

being disbarred for lying in my [*Casino Del Caribe*] deposition." *Id.* ¶ 17.

Siskind alleges that this statement was false. *Id.* ¶ 20. No formal charges had been filed in Maryland, and no one had "even remotely suggested" disbarment. *Id.* ¶ 18. Siskind also "emphatically denies any ethical wrongdoing." *Id.* ¶ 19.

As a result of Friedberg's statement, Siskind alleges that Zokaites has: (1) withheld legal work, causing a loss of legal fees; and (2) "curtailed" contractual relations with Siskind, leading to profit losses. *Id.* ¶¶ 21, 33, 36.

On April 23, 2010, Siskind sued the defendants for defamation and tortious interference with contractual relations. On May 19, 2010, the defendants moved to dismiss. On June 8, 2010, Siskind opposed that motion. ECF No. 8. On June 21, 2010, the defendants filed their reply. ECF No. 9.

II. Analysis

  A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court bears in mind that Rule 8(a)(2) requires only a "short and plain

statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; the facts as pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "'show'" the plaintiff is entitled to relief. *Id*. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)). "[W]he[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief." *Id*. (third alteration in original) (citation and internal quotation marks omitted). The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations,"

*Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted).

B. Choice of Law

In a diversity case, the choice of law rules are those of the state in which the district court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). In tort cases, Maryland uses the *lex loci delicti* rule, which applies the law of the place "where the last event required to give rise to the tort occurred." *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 613, 911 A.2d 841, 844 (2006).

For defamation claims, the law of the state where the defamatory statement was published will govern. *See Yang v. Lee*, 163 F. Supp. 2d 554, 561 (D. Md. 2001). Because the allegedly defamatory statement was published in Maryland, Maryland law applies to Siskind's defamation claim. *See id.*; Compl. ¶¶ 15, 17.

For tortious interference with contractual relations claims, the law of the state where the "financial consequences of [the] defendants' tortious acts" were felt will apply. *In re*

*Barton Min. Co.*, No. 06-625, 2008 WL 5114284, at *2 (Bankr. N.D. W. Va. Nov. 25, 2008) (citation and internal quotation marks omitted).[2] Siskind alleges that he "lost legal fees and . . . profits in certain business relationships with Zokaites." Compl. ¶ 36. Because Siskind lives and works in Florida, he presumably felt those "financial consequences" there. *See In re Barton Min. Co.*, 2008 WL 5114284, at *2; Compl. ¶ 1; ECF No. 13 ¶ 1. Thus, Florida law will apply to Siskind's tortious interference claim.

C. Defamation Claim (Maryland Law)

Count One alleges that Friedberg's statement during Zokaites's *La Mesa Racing* deposition break--"Siskind is being disbarred for lying in my [*Casino Del Caribe*] deposition"--was defamatory. Compl. ¶¶ 23-34.

A *prima facie* Maryland defamation claim must allege: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198, 935 A.2d 719, 723-24 (2007).

In moving to dismiss, the defendants assert: (1) Siskind failed to sufficiently allege the second element because the

---

[2] *See also Chambers v. Cooney*, 535 F. Supp. 2d 1255, 1260 n.4 (S.D. Ala. 2008).

statement was not necessarily false; and (2) the statement was absolutely privileged. Mot. to Dismiss 3–8.

1. Siskind Sufficiently Pled that the Statement Was False

A false statement is one "that is not substantially correct." *Spengler v. Sears, Roebuck & Co.*, 163 Md. App. 220, 240, 878 A.2d 628, 640 (2005).[3] Siskind alleges that Friedberg's statement was "false" because no formal charges were filed against him, and no one "even remotely suggested" he would be disbarred. Compl. ¶ 18.

The defendants assert that Siskind has acknowledged a disciplinary action was pending against him. Mot. to Dismiss 8. They state that because "disbarment could be the ultimate sanction," the statement "Siskind is being disbarred" was not necessarily false. *Id.*; ECF No. 9 at 4–5.

The statement was not "substantially correct." *Spengler*, 163 Md. App. at 240, 878 A.2d at 640. The pendency of the Bar complaint did not mean that Siskind was "being disbarred."[4] By asserting that Maryland had neither filed formal charges nor

---

[3] *See Spengler*, 163 Md. App. at 241, 878 A.2d at 641 (credit delinquency reports were "substantially correct" even though they failed to state that the charges were disputed; no evidence that the reports were "false").

[4] *See Bagwell v. Peninsula Reg. Med. Ctr.*, 106 Md. App. 470, 510, 665 A.2d 297, 317 (1995) (statement that an employee was fired after hitting a patient "obviously was not false" because that actually was the termination reason).

suggested disbarment, Siskind sufficiently "allege[d] facts" to show that the statement was false. Compl. ¶ 18; *Bass*, 324 F.3d at 764–65.

2. The Absolute Privilege Does Not Apply

The defendants assert that Friedberg's statement, during Zokaites's *La Mesa Racing* deposition break, is absolutely privileged. Mot. to Dismiss 4, 6–7.

In Maryland, an attorney's defamatory statement is absolutely privileged if it (1) occurs during a judicial proceeding, and (2) has "some reference or relation to the proceeding."[5] The purpose of the privilege is to "determine the truth" and preserve "the proper administration of justice." *Adams v. Peck*, 288 Md. 1, 5, 415 A.2d 292, 294 (1980).

    a. The Statement Did Not Occur During a Judicial Proceeding

Although the absolute privilege covers depositions, *Di Blasio v. Kolodner*, 233 Md. 512, 522, 197 A.2d 245, 250 (1964), Maryland has not addressed whether the privilege applies to

---

[5] *Dixon v. DeLance*, 84 Md. App. 441, 448, 579 A.2d 1213, 1216 (1990). During a hearing to set child visitation terms, the wife's lawyer stated that the husband could not provide a proper environment because he lived with Dixon and her "illegitimate child." *Id.* at 443–44, 579 A.2d at 1214. In suing for defamation, Dixon argued that the statement was not absolutely privileged because it was irrelevant to deciding visitation. *Id.* at 450, 579 A.2d at 1217. The statement was privileged because it "related to the propriety of certain persons being present while the visitation took place." *Id.*

8

breaks. The privilege does not apply when "safeguards" are missing, such as when the proceeding is "not under oath," or a "complete record [is not being] kept." *Arroyo v. Rosen*, 102 Md. App. 101, 110, 645 A.2d 1074, 1079 (1994). Because this was a deposition break, the Court will "view the complaint in a light most favorable" to Siskind by inferring that Zokaites was not under oath and on the record during the break. *See Mylan Labs.*, 7 F.3d at 1134.[6] Thus, Friedberg's statement did not occur during a judicial proceeding.

    b. The Statement Was Not Related to the Proceeding

Had Friedberg's statement occurred during the *La Mesa Racing* deposition, it would not have had a bearing on the "subject matter" of that proceeding. *Dixon*, 84 Md. App. at 449–50, 579 A.2d at 1217. The defendants assert that the statement relates to the *La Mesa Racing* deposition because Siskind had a "business relationship with Zokaites that related to the [*La Mesa Racing*] action." Mot. to Dismiss 6–7; ECF No. 9 at 2–3. The defendants have not explained *how* the statement "Siskind is being disbarred for lying in [the *Casino Del Caribe*] deposition" relates to the *La Mesa Racing* bankruptcy. The statement did not serve to "administ[er] justice" or "determin[e] probative facts

---

[6] *See also* ECF No. 8 at 10 (Siskind's assertion that "Zokaites was not under oath . . . and no record was being made").

9

and opinions" about the *La Mesa Racing* matter.[7] Thus, Friedberg's statement is not absolutely privileged.

Accordingly, the defendants' motion to dismiss Count One will be denied.

D. Tortious Interference with Contractual Relations Claim (Florida Law)

Count Two alleges that Friedberg's statement tortiously interfered with Siskind and Zokaites's contractual relationship. Compl. ¶¶ 35–38.

In Florida, a tortious interference with contractual relations claim must allege: "(1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) absence of any justification or privilege; and (5) damages resulting from the breach." *McKinney-Green, Inc. v. Davis*, 606 So.2d 393, 397–98 (Fla. Dist. Ct. App. 1992).

In moving to dismiss, the defendants assert: (1) the first and third elements were not sufficiently pled; (2) the statement was absolutely privileged; and (3) the statement was not necessarily false. *See* Mot. to Dismiss 9.

---

[7] *Compare Adams*, 288 Md. at 5, 8, 415 A.2d at 294, 296 (psychiatrist's defamatory statement about a father's abusive tendencies to the mother's attorney in a custody matter was absolutely privileged because it was "probative" of whether to modify the father's visitation rights).

10

1. Siskind Sufficiently Pled that Contracts Existed

Siskind alleges that he and Zokaites entered into "several business relations and contracts." Compl. ¶ 16. The defendants assert this is insufficient because Siskind has not provided contract "specifics" such as "date[s]" and "basic terms." Mot. to Dismiss 4. Because only a contract's "existence" is required,[8] Siskind has sufficiently pled this element.

2. Siskind Sufficiently Pled that the Defendants
    Intentionally Procured Breaches of Contracts

Intentionally procuring a contract's breach includes knowing about and "intentionally" interfering with the contracting parties' relationship. *See Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.*, 899 So.2d 1222, 1228–29 (Fla. Dist. Ct. App. 2005). A tortious interference claim fails if the "complaint indicates" that one of the contracting parties "himself . . . contravene[d] the agreement." *McKinney-Green*, 606 So.2d at 398.

Siskind states that the defendants "intentionally" and "wrongfully interfered" with his contractual relationship by making the statement with "full knowledge" that Zokaites would "terminate or curtail existing . . . contract[s]." *Id.* ¶ 36.

---

[8] *Cf. Sullivan v. Econ. Research Props.*, 455 So.2d 630, 631–32 (Fla. Dist. Ct. App. 1984) (contract did not exist because it was not validly formed).

11

He alleges that Zokaites has withheld legal work from him and "curtailed" their contractual relations. Compl. ¶¶ 21, 36.

The defendants assert that the complaint does not sufficiently allege that Zokaites (1) was "induced" by the statement to terminate contracts with Siskind, or (2) breached any contracts. Mot. to Dismiss 9.

However, Siskind's allegations that Zokaites "curtailed" their contracts because the defendants "intentionally" interfered with the relationship by making the statement allows the Court to "draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." Compl. ¶¶ 21, 36; *Iqbal*, 129 S. Ct. at 1949; *Shands*, 899 So.2d at 1229. Indeed, the complaint does not indicate that the contractual relationship was "contravene[d]" by Siskind or Zokaites. *See McKinney-Green*, 606 So.2d at 398. Siskind has sufficiently pled this element.

3. The Absolute Privilege Does Not Apply

The defendants assert that the statement is absolutely privileged because it occurred during Zokaites's *La Mesa Racing* deposition break, and Siskind shared a business relationship with Zokaites regarding the *La Mesa Racing* bankruptcy. Mot. to Dismiss 6-7; ECF No. 9 at 2-3.

In Florida, an attorney's statement that tortiously interferes with contractual relations is absolutely privileged

12

if it (1) occurs during a judicial proceeding, and (2) "has some relation to that proceeding." *DelMonico v. Traynor*, No. 4D08-4035, 2010 WL 2382570, at *2 (Fla. Dist. Ct. App. June 16, 2010).

Because Florida interprets a "judicial proceeding" broadly, Zokaites's deposition break may have been one.[9] But the defendants have not explained how the statement that Siskind "is being disbarred" because of his *Casino Del Caribe* deposition relates to the *La Mesa Racing* bankruptcy.[10] Thus, the statement was not absolutely privileged.

4. Pleading Falsity Is Not Required

The defendants assert that Siskind has not alleged facts to show that Friedberg's statement was false. Mot. to Dismiss 8. Because a statement need not be false to tortiously interfere

---

[9] *See, e.g.*, *Kidwell v. General Motors Corp.*, 975 So.2d 503, 505 (Fla. Dist. Ct. App. 2007) ("informal," "quasi-judicial" arbitration hearing was absolutely privileged); *Ross v. Blank*, 958 So.2d 437, 441 (Fla. Dist. Ct. App. 2007) (absolute privilege protects statements that are "not necessarily made . . . under oath"); *Stewart v. Sun Sentinel Co.*, 695 So.2d 360, 362–63 (Fla. Dist. Ct. App. 1997) (notice of inmate's excessive force claim in a newspaper was absolutely privileged as a statement preliminary to a judicial proceeding).

[10] *Compare Sussman v. Damian*, 355 So.2d 809, 810–12 (Fla. Dist. Ct. App. 1977) (attorney's "personal attack" on his opponent, including accusations of "improprieties . . . unrelated to the subject matter of the lawsuit," was not absolutely privileged).

13

with a contractual relationship,[11] this argument does not support dismissal of Siskind's tortious interference claim.

Accordingly, the defendants' motion to dismiss Count Two will be denied.

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss will be denied.

<u>December 7, 2010</u>              <u>          /s/          </u>
Date                                     William D. Quarles, Jr.
                                           United States District Judge

---

[11] *See, e.g.*, *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814–15 (Fla. 1995) (furniture manufacturer's true statement that it had split from its furniture dealer partner and had opened new outlets to fill the dealer's old orders tortiously interfered with dealer's customer relationships).